IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SKF USA, INC.,

          Plaintiff,

v.

JAMES W. MILLER, JR.,

          Defendant.

CIVIL ACTION NO. 10-4625

**MEMORANDUM**

YOHN, J.                                                                         March 15, 2011

Plaintiff SKF USA, Inc. ("SKF") brings this declaratory-judgment action against defendant James W. Miller, Jr., seeking a judicial determination of the legal rights and obligations of the parties under an employment agreement. Currently before me is Miller's motion to dismiss this case in favor of a breach-of-contract action he has filed against SKF in the Northern District of Illinois and SKF's cross-motion to enjoin Miller from prosecuting the Illinois action. For the reasons set forth below, I will grant Miller's motion to dismiss this action and deny SKF's cross-motion.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

In connection with SKF's purchase of a company owned by Miller in January 2007, SKF, a Delaware corporation with its principal place of business in Lansdale, Pennsylvania, and Miller, a resident of Illinois, entered into a five-year employment agreement. (SKF's Compl. ¶¶ 1–2, 5–6, 11; *id.* Ex. A, Employment Agreement ("Agreement").) The agreement described

Miller's duties and set forth the terms of his employment, including his salary and benefits, his eligibility for bonuses, and his entitlement to severance in the event that SKF terminated him without cause. (Agreement §§ 1–4.) It also contained non-competition and non-solicitation provisions precluding Miller from competing with SKF, or working for or being affiliated with a competitor of SKF, while he was employed by SKF and for a period of time following the termination of his employment. (SKF's Compl. ¶ 17; Agreement § 7.)

According to SKF, Miller's failure to comply with management directives, as well as with various policies and procedures, led SKF to place Miller on probation in April 2010 and, sometime after the conclusion of the probationary period, to suspend him without pay for one month. (SKF's Compl. ¶ 21–23.)

On August 13, 2010, while Miller was on suspension, Miller's attorney sent SKF a letter informing the company that he had been retained by Miller "to pursue a cause of action against [SKF] for breach of [Miller's] written employment agreement." (SKF's Mem. of Law in Supp. of Its Cross-Mot. to Enjoin Duplicative Proceedings in the Northern District of Illinois and in Opp'n to Def.'s Mot. to Dismiss or Stay (docket no. 5-1) ("SKF's Br.") Ex. B, Decl. of Stephen J. Sundheim ("Sundheim Decl."), ex. 2, at 1.) In the letter, Miller's attorney claimed several breaches of the agreement by SKF, including its suspension of Miller without pay (*see id.* at 2–3), and asserted that those breaches "created a de facto *termination without cause* of Mr. Miller by SKF" (*id.* at 3). Miller's attorney asserted that Miller was "ready, willing and able to pursue litigation over these breaches" but that he had "indicated a desire to reach an amicable resolution of these issues." (*Id.* at 4.) He continued: "In the event that a reasonable separation agreement cannot be entered into, Mr. Miller has indicated to me that he is authorizing me to file suit

against [SKF]." (*Id.*)

The parties met on August 25, 2010, in Philadelphia, for settlement negotiations, but they were unable to reach a settlement. (SKF's Br. at 10; Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and/or (6), or in the Alternative, Mot. to Stay Proceedings (docket no. 4) ("Miller's Mot. to Dismiss") ¶¶ 33–35.) Miller contends that as they were leaving, he and his attorney "advised SKF's counsel that since their attempt to reach a mutually acceptable settlement had failed, [he] would be left with no option other than to bring a lawsuit to enforce his rights under the [employment agreement]." (Miller's Mot. to Dismiss ¶ 36.) Miller asserts that "SKF's counsel acknowledged that suit was forthcoming when he told Miller's counsel that depositions of SKF personnel would have to proceed in Pennsylvania, not Illinois." (*Id.* ¶ 37.)

Miller did not return to work when his suspension ended on September 1, 2010, and on September 7, 2010, SKF informed him that his failure to return to work was being treated as a voluntary termination of his employment by him. (SKF's Compl. ¶ 25.)

SKF's counsel asserts that on September 9, 2010, he unsuccessfully attempted to reach Miller's counsel by telephone to inform him of SKF's intention to file suit, and ended up leaving a voicemail message for him. (Sundheim Decl. ¶ 6.) On September 13, 2010, before SKF's counsel had heard back from Miller's counsel (*id.*), SKF filed this declaratory-judgment action against Miller, seeking a declaration (a) that Miller is bound by the non-competition and non-solicitation provisions of the employment agreement and (b) that Miller voluntarily terminated his employment or, in the alternative, that SKF had cause to terminate him.

Two weeks later, on September 27, 2010, Miller filed a breach-of-contract action against SKF in the Northern District of Illinois, seeking back pay, bonuses, and health-care benefits

3

allegedly owed to him under the employment agreement, as well as a declaration that the non-competition and non-solicitation provisions of the employment agreement are void and unenforceable against him as a result of SKF's failure to pay the agreed-upon consideration for his covenant not to compete. Miller filed an amended complaint on October 8, 2010, adding a claim under the Illinois Wage Payment and Collection Act, 820 Ill. Comp. Stat. 115/1 *et seq.*

Arguing that the Illinois action is duplicative of the declaratory-judgment action that it had previously filed in this court, on October 19, 2010, SKF moved to dismiss the Illinois action or to transfer it to this district.

On November 8, 2010, while SKF's motion to dismiss or transfer was pending in the Northern District of Illinois, Miller filed the current motion to dismiss this declaratory-judgment action in this court,[1] arguing that "it is an invalid anticipatory action" that merely asserts affirmative defenses to his breach-of-contract claim and seeks to deny him both his status as the natural plaintiff and his choice of forum. (Miller's Mot. to Dismiss ¶ 15.) In response, on November 29, 2010, SKF filed a cross-motion to enjoin Miller from prosecuting the Illinois action.

On December 29, 2010, the Illinois district court issued a memorandum opinion and order denying SKF's motion to dismiss or transfer the Illinois action. *See Miller v. SKF USA, Inc.*, No. 10 C 6191, 2010 U.S. Dist. LEXIS 137768 (N.D. Ill. Dec. 29, 2010). The court "compare[d] the convenience of the Illinois and Pennsylvania forums, evaluate[d] the

---

[1] In the alternative, Miller sought to stay this action pending resolution of SKF's motion to dismiss or transfer the Illinois action. The Illinois court has since denied that motion.

[employment agreement's] choice of law provision,[2] consider[ed] the first-to-file rule, and analyze[d] whether the transfer is in the interest of justice." *Id.* at *6. After balancing these factors, the court concluded that SKF had not met its burden of demonstrating that dismissal or transfer of the action was warranted. *Id.* at *16–*17.

On January 26, 2011, SKF filed a motion in the Illinois district court to stay the Illinois action. The Illinois court denied that motion, and on February 10, 2011, SKF filed its answer to Miller's amended complaint in the Illinois action.

## II. DISCUSSION

Both parties agree that this declaratory-judgment action and the Illinois action are duplicative and that such duplicative litigation is costly and a waste of judicial resources. They disagree, however, on the appropriate remedy.

Miller seeks to dismiss SKF's declaratory-judgment action in this court, arguing that "it is an invalid anticipatory action" that merely asserts affirmative defenses to his breach-of-contract

---

[2] The agreement contained a choice-of-law and forum-selection provision:
This Agreement shall be construed and enforced in accordance with the internal laws, and not the laws of conflicts, of the State of Illinois. Each of the parties hereto consents and submits to the jurisdiction of the courts of the State of Illinois and of the courts of the United States for a judicial district within the Territorial limits of the State of Illinois. For all purposes of this Agreement, ... including, without limitation, any action or proceeding instituted for the enforcement of any right, remedy, obligation, or liability arising under or by reason hereof or thereof, each party consents and submits to the venue of such action or proceeding in any Circuit Court in Cook County, Illinois, and the Untied States District Court for the Northern District of Illinois.
(Employment Agreement § 12.) As the Illinois court explained, the forum-selection provision is a "permissive clause" that "lacks mandatory or obligatory language as to the forum." *Miller*, 2010 U.S. Dist. LEXIS 137768, at *9. The choice-of-law provision, on the other hand, was couched in mandatory terms.

5

claim and seeks to deny him both his status as the natural plaintiff and his choice of forum. (Miller's Mot. to Dismiss ¶ 15.)[3] SKF, on the other hand, contends that because it filed this declaratory-judgment action first, under the "first-filed rule" Miller's motion to dismiss should be denied and Miller should be enjoined from prosecuting the later-filed Illinois action.

The Illinois court, however, has already addressed the application of the first-filed rule to this case and has concluded that the rule does not require that the Illinois action be dismissed in favor of this declaratory-judgment action or transferred to this district. Principles of judicial comity strongly suggest that I therefore deny SKF the relief it seeks and that I dismiss this action in favor of the Illinois action.

A federal common-law doctrine of comity, the first-filed rule is intended to "encourage[] sound judicial administration," *EEOC v. Univ. of Pa.*, 850 F.2d 969, 971 (3d Cir. 1988), *aff'd on other grounds*, 493 U.S. 182 (1990), and "to prevent the judicial embarrassment of conflicting judgments," *id.* at 977. The rule provides that, as a general matter, "in all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *Id.* at 971 (internal quotation marks omitted). The rule thus gives a district court the authority "to

---

[3] Miller explains that he has brought this motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) because he is requesting that the court decline to exercise jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. *See Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) (reaffirming that district court's exercise of jurisdiction over declaratory-judgment action is discretionary). This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332 and 28 U.S.C. § 2201. My decision to dismiss of this action is based not on a lack of subject-matter jurisdiction but on a refusal to exercise that jurisdiction. *See General Motors Corp. v. Volpe*, 457 F.2d 922, 924 (3d Cir. 1972) (directing that "the district court's order be modified to indicate that dismissal . . . was based on a proper refusal to exercise its jurisdiction rather than a 'lack of jurisdiction'").

Miller also moves to dismiss this action under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. But because Miller has offered no argument in support of this Rule 12(b)(6) motion, I will not address it.

enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Id.*

As the Third Circuit has explained, however, that authority "is not a mandate directing wooden application of the rule without regard to rare or extraordinary circumstances, inequitable conduct, bad faith, or forum shopping." *Id.* at 972. To be sure, "[t]he letter and spirit of the first-filed rule . . . are grounded on equitable principles," *id.* at 977, and "fundamental fairness dictates the need for 'fashioning a flexible response to the issue of concurrent jurisdiction,'" *id.* at 977 (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army*, 611 F.2d 738, 750 (9th Cir. 1979)). Courts have thus "consistently recognized that the first-filed rule 'is not a rigid or inflexible rule to be mechanically applied.'" *Id.* at 976 (quoting *Pacesetter Systems, Inc. v. Medtronic, Inc.*, 678 F.2d 93, 95 (9th Cir. 1982)).

Rather, when confronted with duplicative litigation in another federal district court, a court must exercise its discretion and "must act 'with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result.'" *Id.* at 977 (quoting *Langnes v. Green*, 282 U.S. 531, 541 (1931)). This "requires the trial judge to possess the flexibility necessary to fit the decision to the individualized circumstances." *Id.* (internal quotation marks omitted).

Here, the Illinois district court has already considered the application of the first-filed rule to this case and has concluded that neither dismissal of the Illinois action nor transfer of that action to this district is warranted. Contrary to SKF's contention that the Illinois court's decision should not end my consideration of the matter since suit was first brought by SKF in *this court*, the principles underlying the first-filed rule lead me to defer to the Illinois court's determination

7

and deny SKF the relief that it seeks. To conclude otherwise would effectively give SKF "two federal forums in which to present the very same contentions addressed to the court's discretion." *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 48 (2d Cir. 1961) (Lumbard, C.J., concurring in part and dissenting in part). "Not only is such double litigation unfair to the party forced to rebut the same arguments in two proceedings before different courts, but it presents an opportunity for unseemly conflict between coordinate federal courts and causes wasteful delay in judicial administration"—precisely what the first-filed rule is intended to prevent. *Id.; see also Ellicott Mach. Corp. v. Modern Welding Co.*, 502 F.2d 178, 181 (4th Cir. 1974) (concluding on similar facts that where plaintiff in first-filed action sought to have court enjoin prosecution of second-filed action after second court had already denied his motion to transfer second-filed action to first court, plaintiff had effectively "appeal[ed] from one district judge to another," and that the "first-to-file principle . . . must yield in the face of the historic policy of the federal courts . . . that appeal will lie only from 'final decisions of the district courts' and then only in the courts of appeal." (quoting 28 U.S.C. § 1291)). *But see Fowler*, 287 F.2d at 45–46 & n.1 (majority opinion) (concluding on similar facts that decision by court of first-filed action to enjoin proceedings in court of second-filed action was not an abuse of discretion, and indeed was a "wise" decision, notwithstanding second court's prior decision not to transfer action to first court); *see also Nw. Airlines, Inc. v. Am. Airlines Inc.*, 989 F.2d 1002, 1006 (8th Cir. 1993) (confronting different fact pattern but nonetheless disagreeing with reasoning of *Ellicott*).[4]

---

[4] None of these cases, of course, is binding here, but I find the reasoning of Chief Judge Lumbard and the *Ellicott* court persuasive. Their reasoning seems to me to be more consistent with the principles of judicial comity and fairness underlying the first-filed rule than is the reasoning of the majority in *Fowler*. In *Northwest Airlines*, the Eighth Circuit noted that the differences between its case and *Ellicott* were "significant," *id.* at 1006, and that *Ellicott* was "not

SKF contends that the Seventh Circuit, unlike the Third Circuit, does not closely follow the first-filed rule, and thus that the Illinois court's decision should not be determinative here.[5] But SKF chose to litigate in the Northern District of Illinois the question whether this case should be tried in this district, where SKF's action was first filed, or in Illinois when, on October 19, 2010, it filed a motion to dismiss or transfer the Illinois action. It was only after Miller filed, on November 8, 2010, a motion in this court to dismiss SKF's declaratory-judgment action that SKF filed, on November 29, 2010, the current motion to enjoin prosecution of the Illinois action. To the extent that SKF believed that the Third Circuit adheres more closely to the first-filed rule, SKF could have sought relief first from this court, rather than filing a motion in the Illinois court to dismiss or transfer the Illinois action. But having been denied its requested relief by the Illinois court, SKF cannot now seek relief from this court.[6]

---

directly in point," *id.* at 1005, but asserted that even "[l]aying aside the factual differences between [the two cases], we simply do not find *Ellicott* persuasive," *id.* at 1006. In what is arguably dicta, the court explained that "by denying the forum of the first-filed action the ability to enjoin prosecution of the second-filed action, merely because the forum of the second-filed action has denied a motion to transfer, *Ellicott* disserves judicial economy and opens up a potential for conflicting rulings as two separate courts grapple with the same controversy." *Id.* But the court failed to acknowledge the remedy considered here, namely, dismissing the first-filed action in favor of the second-filed action—a remedy that would avoid duplicative litigation and thus eliminate the potential for conflicting rulings. *Cf. Ellicott*, 502 F.2d at 182 (ordering that the first court "suspend all proceedings pending trial of the case in [the second court]" and asserting that "[i]f all matters in dispute are resolved by that trial, as appears likely, then the case in the [first court] should be dismissed").

[5] I need not assess here whether adherence to, or application of, the first-filed rule differs between the two circuits. I note, however, that the Seventh Circuit has characterized its approach as "similar" to that of the other circuits, including the Third Circuit. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 981 (7th Cir. 2010) (noting that although "the Third Circuit refers to a first-to-file rule, it is 'not a mandate directing wooden application of the rule'" (quoting *EEOC v. Univ. of Pa.*, 850 F.2d at 972)).

[6] SKF did, of course, file its motion to enjoin prosecution of the Illinois action *before* the

"Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) (addressing standard that governs a district court's decision to stay a declaratory-judgment action during the pendency of parallel state-court proceedings).[7] The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (internal quotation marks omitted). Indeed, as the Court has explained, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.* at 288. I will thus exercise my discretion under the Declaratory Judgment Act to dismiss SKF's action in favor of the Illinois action.[8]

I recognize that "invocation of the [first-filed] rule will usually be the norm, not the

---

Illinois court decided SKF's motion to dismiss or transfer. But now that the Illinois court has denied SKF's motion to dismiss or transfer, SKF cannot continue to seek relief from this court.

[7] The Declaratory Judgment Act provides, in relevant part:
In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
28 U.S.C. § 2201(a) (emphasis added).

[8] The Seventh Circuit has explained that where "parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief," the court "ordinarily give[s] priority to the coercive action." *Research Automation*, 626 F.3d at 980; *see also Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) ("Cases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." (internal quotation marks omitted)).

exception" and that "[c]ourts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *EEOC v. Univ. of Pa.*, 850 F.2d at 979. But under the circumstances presented here, the goal of judicial efficiency and fairness will best be served by dismissing this action in favor of the Illinois action.

An appropriate order accompanies this memorandum.